## SUPREME COURT—IN BANCO.

*Allen, Ch. J., Davis, J.*

JOSIAH SPALDING *vs.* A. J. CARTWRIGHT AND C. C. HARRIS, ASSIGNEES OF J. C. SPALDING.

A VOLUNTARY ASSIGNMENT for the benefit of creditors gives a creditor a right to a dividend, although his claim accrued while the debtor was in fact insolvent, but did not mature until after, and the insolvency was not known to him.

Justice DAVIS delivered the opinion of the Court.

This matter comes before the Court on an agreed statement of facts by the attorney for plaintiff and attorney for assignees, which is as follows:

"Josiah C. Spalding, being in business in Honolulu, became insolvent, and on March 29th, A. D. 1862, executed an assignment of his property by an instrument, of which a copy is hereto annexed, marked A. Josiah Spalding, father of said insolvent, demands against the assignees under said assignment, a rateable proportion of the assets, claiming that at the time the assignment took effect, said J. C. Spalding was indebted to him to the amount of twenty-nine thousand and seventy-nine 96-100 dollars, ($29,079.96), without interest. It is agreed that Josiah C. Spalding, if present, would swear that the account of Josiah Spalding is correct, but would be compelled to admit, upon cross examination, that he kept two sets of books, and that the books he exhibited did not disclose the true state of his indebtedness to his father. But there is no evidence that Josiah Spalding had any knowledge of these facts, or even of the insolvency of J. C. Spalding, before the execution of the assignment. It

is admitted that shortly before the execution of the assignment, the indebtedness of J. C. Spalding to Josiah Spalding had become reduced, all of which will appear from the account annexed to the petition filed in this case, which may be referred to, but there is no evidence to show that Josiah Spalding contemplated the insolvency of Josiah C. Spalding at the time of such reduction.

"It is also agreed that shortly after news of the insolvency of Josiah C. Spalding reached Massachusetts, William Thwing & Co. commenced an action against J. C. Spalding in the Supreme Judicial Court of that Commonwealth, and summoned Josiah Spalding as trustee, but the answer of the latter having disclosed the assignment already referred to, the proceeding was discontinued, and authority was obtained from the assignees to file a bill in Equity, in the same Court, in the name of said assignees, for discovery and general relief, against Josiah Spalding and Josiah C. Spalding. To this bill, Josiah Spalding submitted an answer under oath, in which he stated his account to be as now presented. The books and papers of Josiah Spalding were examined under direction of a Master in Chancery, after which the bill was dismissed, with costs, for Josiah Spalding. J. C. Spalding was not within reach of the process of the Court, and never appeared nor made any answer.

"If, upon these facts, the Court shall be of opinion that Josiah Spalding is entitled to a dividend upon the estate of J. C. Spalding upon the amount of his claim, judgment shall be rendered for the amount of such dividend, which shall be computed to be a sum equivalent to 14 per cent. upon the amount of J. C. Spalding's indebtedness, with interest upon the same, (which amounts to $1,057.57), till the date of such judgment, subject to a deduction for expenses of the assignees, not to exceed 5 per cent. on $4,071.06 : this judgment not to prejudice the rights of Josiah Spalding to further

dividends on the same amount of indebtedness.    Otherwise, the plaintiff shall become nonsuit.

> "R. H. STANLEY,
> "*Attorney for Assignees.*
> "JOSIAH SPALDING,
> "*By Stephen H. Phillips, his attorney.*"

It appears, then, from the above statement, and the account filed, that Josiah C. Spalding, being in business in Honolulu, became insolvent, and on the 29th of March, 1862, executed an assignment of his property to the defendants, for the benefit of his creditors.    By the account current of the plaintiff, the balance due on September 1st, 1862, was $29,079.96; but at the time of the assignment, in March, a much larger amount was due plaintiff, which appears to be reduced by credits subsequent to the above date, that is, the date of the assignment.    This feature of the case has somewhat embarrassed the Court in their decision, but the counsel for the parties have agreed to submit a further statement to the effect that these were remittances of merchandise made anterior to the assignment, and that they appear only in the plaintiff's account at the time they were received or realized by him.

A portion of the argument has proceeded on the supposition that these remittances were rightful preferences made in the course of regular business by the assignor thereby, before the period of his insolvency.

We have not regarded the transaction strictly in that light, for it would seem from the accounts and the submission, that the dealings were in the ordinary course of business between merchants.    We do not understand them as property set specifically apart for the benefit of a particular creditor other than the usual returns made by one merchant to another. Irrespective of some of the provisions of the Bankrupt Law, and perhaps in some cases where the act done might be supposed to be in conflict with them, which will be hereafter

noticed, the assignor, while he has his property under his own control, and by our law has committed no act of bankruptcy, has a right to pay·which creditor he pleases, and the principle laid down in the elaborate case of Grover and others, appellants, and Wakeman, respondent, decided in the Court of Errors of New York, on appeal from the decision of the Chancellor—11 Wendell, p. 189—is that a debtor in failing circumstances may prefer one creditor or set of creditors by assigning his property for their benefit in exclusion of his other creditors, provided that he devote the whole of the property assigned to the payment of his just debts; that the assignment be absolute and unconditional; that it contain no reservation or condition for his benefit; and does not extort from the fears or apprehensions of his creditors an absolute discharge as a consideration for a partial dividend.

As is said in that case, the true reason why this right of preference has been allowed to the debtor is, that whilst the property is in his hands, unshackled of legal liens and encumbrances, his power over it is absolute; and as he can dispose of it by sale to any person, so he may dispose of it by way of satisfaction to any creditor, and it is only by a bankrupt law like that of England and of this Kingdom, that this control of a debtor over his own property can be arrested, except in cases provided against by the statute of frauds. A similar principle is acknowledged in the cases cited by the Attorney General, Brooks *vs.* Malbury, Holcombe's leading cases, p. 390, and Brashear *vs.* West and others, ib. p. 402.

We have alluded to these cases because reference was made in the argument to the principles which they assert, regarding the right of the debtor to dispose of his property to favored creditors after having become insolvent, or, in the phraseology of our Statute, after having committed acts of bankruptcy, and the weight of authority has favored this partial disposition by the debtor, although distinguished

Josiah Spalding *v.* A. J. Cartwright and C. C. Harris, Assignees, &c.

jurists have been of a contrary opinion. But it is clear that such partial dispositions of property could not be sanctioned by the Courts where bankrupt laws exist as they do in this Kingdom; for as remarked by this Court in another case, the policy of the bankrupt law is equality among creditors; and in order to preserve that equality, the bankrupt's estate, as soon as an act of bankruptcy is committed, becomes a common fund for the payment of his debts, and he loses the character and power of a proprietory over it.

Section 978 of our Civil Code, which is as follows: "The bankrupt shall be divested of all his title and interest in his property from the day of his failure, (except the necessary clothing of himself and family, and such other necessaries, not to exceed the value of three hundred dollars, as the Justice may designate) and every assignment, conveyance or transfer of his property by him, after he shall have become insolvent or committed an act of bankruptcy, except upon a good consideration to a *bona fide* purchaser having no notice of such insolvency or bankruptcy, shall be void, and the property so transferred may be recovered and disposed of by the assignees for the benefit of the creditors," has been adjudicated upon by this Court, first in Fallon *vs.* Robinson and Walker—2 Haw. Rep., p. 227. It was there held that where a person has committed acts of bankruptcy more than ten days previous to being declared a bankrupt, that any transfer of property then made except upon a good consideration to a *bona fide* purchaser having no notice of such insolvency or failure, is void by the statute, and the property must pass to assignees for the benefit of all the creditors. The holding of the Court was in strict conformity to the wording of the statute. The judgment of that case however, turned upon the validity of a mortgage of personal property by the insolvent to a creditor, which he was allowed to retain possession of, and the insolvency of the party was known to the mortgagee.

There is no such feature as that in this case. Everything that was done, as before remarked, was in the regular course of trade. The plaintiff was in a distant country, and it does not appear by the statement of facts that he did or could have had notice of the failing circumstances of his correspondent; and moreover, we believe it would be a rule of undue severity, where merchants are dealing with each other between distant points, to hold that a party had committed an act of bankruptcy every time a balance might occur from either the one or the other, which remained unsatisfied for the short period prescribed by the Statute.

But the statute prescribes also that the demand shall have matured and been presented for payment. Under the submission there is no evidence that any demand against J. C. Spalding had been presented for payment after maturity, and been refused, for ten days or more previous to the assignment. In short, he is not charged with the commission of any act of bankruptcy such as is contemplated by the statute, and which objection was made and proved in the cases which we have recently decided under the bankrupt law, because it is now agreed that the remittances were anterior to the assignment, when acts of bankruptcy should be shown.

The other case decided in this Court is that of A. S. Cleghorn *vs.* J. W. Austin and T. C. Heuck, assignees of John Ross. Like the former case, it turned upon the validity of a mortgage. It was manifest that the plaintiff's agent at the time of obtaining the security was intimately acquainted with the condition of the affairs of Ross; that he had long been owing large sums to other creditors, and had often been pressed by them for payment, which he had been unable to make.

The ingredients of these cases do not enter into this. We do not therefore regard the present case as coming within the rule upon which the foregoing cases have been decided

Josiah Spalding *v.* A. J. Cartwright and C. C. Harris, Assignees, &c.

in this Court. The facts submitted do not place it within the requisitions of the statute as exhibiting any fraud on the part of the plaintiff. Instead of that, he was undoubtedly deceived by the flattering accounts he received. There is no law of the Kingdom forbidding these voluntary assignments; they are executed almost, we might say, daily. The creditors may accede to them or not, as they please. It is evident that they do not have the binding force of the process in bankruptcy; but so long as they do not contravene that law, and are accepted without objection by those most interested —the creditors—it is not for the Court to interfere as to the disposition of the property under them without our aid being invoked.

Therefore, as the case stands submitted to us, we are of opinion that the plaintiff should be allowed his dividend upon the estate of J. C. Spalding for the amount of his claim as stipulated in this agreement, the computation to be made according to the rate indicated, subject to the deduction named for the expenses of the assignees in the amount found due. The clerk of the Court will find this amount upon examination of the accounts submitted in the case.

Hon. S. H. Phillips, for plaintiff.

R. H. Stanley, Esq., for defendants.

Honolulu, February 5th, 1868.